Commonwealth *v.* Pegram, Appellant.

Argued November 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John W. Packel,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Linda Conley,* Assistant District Attorney, with her *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1973:

Appellant, Elwood Pegram, was arrested on October 27, 1970, and charged with burglary, larceny and receiving stolen goods. A timely filed pretrial motion to suppress evidence was heard and denied. In February, 1971, appellant's first trial resulted in a mistrial, due to the jury's inability to reach a verdict. Thereafter, at a second trial in March of 1971, appellant was found guilty of burglary and larceny and not guilty of receiving stolen goods. Post-trial motions were denied and appellant was sentenced to serve a 6 month to three year term of imprisonment.

The Superior Court affirmed in an opinionless per curiam order, and this Court granted allocatur. We now reverse and remand for a new trial.

Appellant on this appeal challenges the trial court's refusal to suppress evidence seized by the police, where, at the time of the search, the officers had no reason to believe that appellant was engaged in criminal activity or armed and dangerous.[1] For the reasons set out below, we agree with appellant's contention.

The facts, which are not in dispute, are as follows: On October 27, 1970, at approximately 1:00 P.M., two police officers responded to a call that a burglary was in progress at 4232 Chestnut Street in the City of Philadelphia. Upon arriving, the officers entered the building, whereupon they discovered that the rear door to a first floor apartment had been forced open. A search of the area yielded no clues. The officers then departed. While outside, however, they noticed a man, later identified as appellant, walking down an alley which runs parallel to Chestnut Street. The appellant looked towards the officers, and then began to run in the direction in which he had been walking. The officers gave chase, and approximately two blocks later, rediscovered appellant, again walking. The officers stopped their vehicle and called for appellant to come over, which appellant then did voluntarily. Officer Reid asked appellant his name, and "patted him down." This search yielded a knife, and appellant was arrested. The officers then conducted a full search and discovered on appellant's person a number of items which were later identified as having been taken from the burglarized

---

[1] Appellant also alleges that the trial court erred in allowing the prosecution to introduce into evidence a knife found on appellant's person at the time of his arrest, since the knife was unrelated to the crimes for which the defendant was then on trial. In view of our disposition, we need not decide this issue.

apartment. Appellant was thereafter charged with the crimes which are the basis of the instant appeal.

The Commonwealth concedes that probable cause[2] did not exist for appellant's arrest at the time he was ultimately "stopped."[3] Such a concession on this record is correct, where the *only* suspicious facts at the officers' disposal were that a burglary had been committed (with no clues) and that a man, not found in or fleeing from the building, ran away when he saw the police outside.

Although flight may indicate, to some degree, "consciousness of guilt", *Commonwealth v. Collins,* 440 Pa. 368, 371, 269 A. 2d 882, 884 (1970), flight standing alone (as in this case) is not sufficient to establish probable cause for an arrest. As the Superior Court noted in *Commonwealth v. Santiago,* 220 Pa. Superior Ct. 111, 114-15, 283 A. 2d 709, 711 (1971): "The Commonwealth urges that even if this does not constitute probable cause the subsequent flight created valid grounds for the arrest. The Court in United States v. Margeson, 259 F. Supp. 256 (E.D. Pa. 1966), considered the question of whether flight could constitute probable cause and stated: 'Flight, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong indication that there is something that those

---

[2] See, e.g., *McCray v. Illinois,* 386 U.S. 300, 87 S. Ct. 1056 (1967); *Commonwealth v. Murray,* 437 Pa. 326, 263 A. 2d 886 (1970); *Commonwealth v. Marino,* 435 Pa. 245, 255 A. 2d 911 (1969), cert. denied, 397 U.S. 1077 (1970); *Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968).

[3] In fact, Officer Reid, at the suppression hearing on direct examination, testified that he had no intention of taking appellant into custody at the time appellant crossed the street and approached the officers.

fleeing wish to hide from the police and may constitute probable cause for arrest. . . . However, *flight, in and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away would always be subject to a legal arrest.* Such a procedure cannot be countenanced under the Fourth and Fourteenth Amendment as presently interpreted by the Supreme Court.' Id. at 265. See also, Commonwealth v. Clarke, 219 Pa. Superior Ct. 340, 280 A. 2d 662 (1971). We agree that flight alone does not constitute probable cause, and are of the opinion that in this case there were no factors coupled with flight which might have constituted probable cause for arrest." (Emphasis in original.)

It is clear that probable cause did not exist for appellant's arrest. However, the Commonwealth attempts to justify the officers' actions in detaining and searching appellant as a "stop and frisk" under *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968) and *Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889 (1968). Such an assertion is equally without merit.

In enunciating the test to be applied, the United States Supreme Court in *Terry* held that a "stop and frisk" is constitutionally permissible *only ". . . where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, . . ."* Terry, supra at 30, 88 S. Ct. at 1884 (emphasis added). See also *Commonwealth v. Pollard,* 450 Pa. 138, 299 A. 2d

233 (1973); *Commonwealth v. Berrios*, 437 Pa. 338, 263 A. 2d 342 (1970); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A. 2d 276 (1969); *Commonwealth v. Clarke*, 219 Pa. Superior Ct. 340, 280 A. 2d 662 (1971).

As this Court noted in *Commonwealth v. Berrios*, supra: "*A search on this ground is justified only when 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger'*: Terry v. Ohio, supra at 27, 88 S. Ct. at 1883. *In other words, the sole justification for such a search is the protection of the police officer or others nearby. Moreover, the arresting officer must be able 'to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'* Sibron v. New York, 392 U.S. 40, 64, 88 S. Ct. 1889, 1903 (1968). *Good faith on the part of the officer, in itself is not enough*: Terry v. Ohio, supra n. 3." 437 Pa. at 341, 263 A. 2d at 343 (emphasis added).

The record here does not disclose facts sufficient to meet these constitutionally required standards. Assuming that the officers did observe "unusual conduct" which might reasonably have led them to conclude, in light of their experience, that criminal activity may have been afoot, thus justifying the "stop", no such conduct was observed which would lead to the conclusion that appellant was either "armed or presently dangerous."

Here, although appellant initially fled, he voluntarily came to the officers' vehicle when they called out to him. The only "reasonable inquiry" made by the arresting officer thereafter was to ask appellant his name. Although the officer (Reid), at the suppression hearing failed to recall appellant's exact response, the officer did remember that the "pat down" occurred *immediately* following the officer's lone question.

Officer Reid's testimony at the suppression hearing clearly indicates that he was unable to point to any "... particular facts from which he *reasonably* inferred that the individual was armed or dangerous." *Sibron,* supra at 64, 88 S. Ct. at 1903 (emphasis added).

"Q. Okay. Now, then you went over to him, when you called him over to the car, he came voluntarily; is that right? A. That is correct. Q. Now, when you called him over, was there any reason for you to believe that this man was armed? Did he do or say anything to you to indicate that he was armed or dangerous to you? A. I don't know that man. Q. Right? A. I don't know whether he is armed or he isn't armed. For my own protection—Q. Is there any special reason to distinguish this man from any other man that you don't know, *don't think that this man had a weapon on him? Is there anything he did or said that would indicate to you that he had a weapon other than the fact that you don't know him?* A. No."

On this record, where there was no probable cause for an arrest, and where there were no facts from which one could conclude that appellant was either armed or dangerous, we hold that the initial "frisk" was without lawful justification.[4] Accordingly, the knife seized should have been suppressed.

---

[4] Implicit in our decision today, however, is a clear recognition that "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. 143, 145-46, 92 S. Ct. 1921, 1923 (1972) (citations omitted).

Further, applying the principles of *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963),[5] we must also conclude that the stolen property found on appellant's person should not have been admitted at trial, since that property was clearly " '. . . come at by the exploitation of that [primary] illegality'. . . ." *Wong Sun* at 488, 83 S. Ct. at 417. See also *Commonwealth v. Pollard,* 450 Pa. 138, 299 A. 2d 233 (1973).

Judgment of sentence reversed and a new trial granted.

Mr. Chief Justice JONES dissents.

---

[5] The question to be resolved here is ". . . 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).