392 A.2d 1298

**COMMONWEALTH of Pennsylvania**

v.

**Gregory ANDERSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 1978.

Decided Oct. 5, 1978.

Defender Ass'n of Philadelphia, Benjamin Lerner, Defender, John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

## OPINION OF THE COURT

NIX, Justice.

On March 8, 1975, police radio received an anonymous call and transmitted a report that there was a man who was an escapee from a drug rehabilitation program in a bar at 57th and Master Streets in the City of Philadelphia. The caller described the person as a Negro male, named "Perry" about 5'10" with a large "bush" hair style and wearing a dark coat. As a result of receiving the above information, two police officers went to the Capri Bar, entering by the rear door. Upon entrance they observed the appellant, Gregory Anderson and decided that he fitted the above description.

They approached appellant and asked him his name. Appellant replied that his name was Charles Hayes. Appellant was requested to stand and one officer asked whether he was carrying any weapons. The other officer without waiting for a response leaned over and touched appellant's right jacket pocket and felt an object which appeared to him to be a gun. The object was retrieved from the pocket of appellant and found to be a loaded and operable .22 calibre revolver. After seizing the weapon the appellant was searched and identification papers were found upon his person indicating that he was known as "Perry" and that his correct name was Gregory Anderson.

Thereafter appellant was convicted in the Municipal Court of Philadelphia upon the charges of carrying a firearm without a license, carrying a firearm in a public place, possession of an instrument of crime, and prohibited offensive weapon (former convict prohibited from owning or possessing a firearm). Prior to trial a timely motion to suppress evidence was denied. The Court of Common Pleas of Philadelphia County denied his petition for a writ of certiorari.[1] This decision was affirmed by the Superior Court, *Commonwealth v. Anderson*, 240 Pa.Super. 1, 360 A.2d 739 (1976). This Court granted appellant's petition for review.[2]

This appeal raises, once again, the question of police officers authority to "stop" and "frisk" a suspect under circumstances which do not amount to probable cause. The United States Supreme Court has made it clear that the Fourth Amendment applies to all seizures of a person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676

---

**1.** The procedure for appeal from the Municipal Court to the Court of Common Pleas by writ of certiorari has been abolished in cases involving summary convictions. See Pa.R.Crim.P. 67(f) and 159(e).

**2.** Our jurisdiction in this case is based on the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978–79).

(1969); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the case of *Terry v. Ohio, supra,* the United States Supreme Court pointed out that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. at 1880. That court further stated:

"we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

We must still consider, however, the nature and quality of the intrusion on individual rights which must be accepted if police officers are to be conceded the right to search for weapons in situations where probable cause to arrest for crime is lacking." *Id.* at 24, 88 S.Ct. at 1881.

We are here called upon to determine whether the intrusion upon the personal security of appellant under the facts of this case was constitutionally offensive. Considering this question we are mindful of the United States Supreme Court's admonition:

"[E]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry v. Ohio, supra,* at 24–25, 88 S.Ct. at 1882.

The Commonwealth argues that the nature of the intrusion and the circumstances surrounding it in this case are essentially the same as that approved in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1973). In *Ad-*

ams, a police officer assigned to a high-crime area of Bridgeport, Connecticut was approached by a person known to the officer at approximately 2:15 a. m. This person advised the officer that an individual was seated in a nearby car carrying narcotics and that the person had a gun concealed at his waist. The officer approached the vehicle to investigate the report. The officer tapped at the car window and asked the occupant, Robert Williams, to open the door. Williams rolled down the window instead and the officer reached into the car and removed a fully loaded revolver from Williams' waistband. The gun was not visible to the officer from the outside of the car, but was in precisely the place indicated by the informant. The United States Supreme Court found that the officer had sufficient information to justify his approaching Williams and in view of the late hour and the information he possessed, the court determined that the officer had reason to fear for his safety and that the limited intrusion caused by the removal of the weapon from the person of Williams was reasonable.

We do not accept the Commonwealth's position that the facts in *Adams* correspond to the facts presented in this appeal. First, in *Adams*, the officer knew the informant. Whereas here, the information was supplied by an anonymous caller whose reliability was unknown. In *Adams*, the defendant was pointed out to the officer by the person providing the information. In the present instance only a general description was given, one which would fit any number of individuals. *See Commonwealth v. Pinney*, 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1969). In *Adams*, the officer had been advised that the suspect was armed. Here we do not believe that the mere fact that an individual was on an unauthorized leave from a drug rehabilitation program would justify a reasonable belief that he was armed and dangerous. Nor does the fact that appellant gave a false name aid the Commonwealth's position. At the time that appellant responded to the inquiry the officers had no basis for knowing that the name given was false.

In striking the balance between the public interest and the individual's right to personal security free from arbitrary interference of law enforcement officials, the initial inquiry must focus upon the propriety of the initial restraint of appellant's freedom of movement.[3] *Adams v. Williams, supra.* As noted by Mr. Justice HARLAN in a concurring opinion in *Terry,* the right to "frisk" depends upon the reasonableness of a forcible stop to investigate a suspected crime. *Terry v. Ohio,* 392 U.S. at 33, 88 S.Ct. 1868.[4]

The reasonableness "of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers", *United States v. Brignoni-Ponce,* 422 U.S. at 878, 95 S.Ct. at 2579. The *Terry* Court made it clear that such a balance cannot be struck where the police are acting upon information that would not warrant a man of reasonable caution in the belief that the action taken was appropriate. *Terry v. Ohio,* 392 U.S. at 21–22, 88 S.Ct. 1868.

> "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e. g., *Beck v. Ohio, supra* [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142]; *Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). And simple ' "good faith on the part of the arresting officer is not enough." . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' *Beck v.*

3. There is no serious question that Anderson was not free to ignore the officers' inquiry and walk away.

4. *"So long as the officer is entitled to make a forcible stop,* and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search . . ." (emphasis added; footnote and citations omitted) *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1977).

*Ohio, supra,* at 97, 85 S.Ct. at 229 [13 L.Ed.2d at 148]." *Id.* at 22, 88 S.Ct. at 1880.

Here the officers were acting upon an anonymous tip. Because of the general nature of the description it cannot be argued that the tip was corroborated by the appellant's presence in the bar. Moreover, there was nothing observable in his conduct in the officers' presence to suggest that he was in anyway involved in criminal activity or that he was the person they were seeking. In fact the only basis for the officers' belief that a crime had occurred rested upon unverified information supplied by the unidentified informer. Even though the intrusion here may be termed modest, we do not believe that the officers here possessed a reasonable suspicion to justify the "stop." *See United States v. Brignoni-Ponce, supra.* Having reached this conclusion it therefore follows that the officers improperly searched appellant and therefore the weapon produced as a result of this illegal search should have been suppressed.

The judgment of sentence is reversed and a new trial is ordered.

MANDERINO, J., did not participate in the consideration of this case.

LARSEN, J., dissents.