409 A.2d 437

**COMMONWEALTH of Pennsylvania**

v.

**Vertcell SABB, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Filed Aug. 24, 1979.

Petition for Allowance of Appeal Denied Dec. 19, 1979.

Robert B. Mozenter, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, for Commonwealth, appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

On February 16, 1977, appellant Vertcell Sabb was found guilty by a jury of the crimes of simple assault, possession of an instrument of crime, involuntary deviate sexual intercourse, and rape.[1]  Post trial motions were argued and denied and a sentence of four to twelve years imprisonment was imposed.  On this direct appeal, appellant assigns as error various rulings of the court below as well as the ineffectiveness of his trial counsel.  We find his contentions without merit and will therefore affirm.

Facts adduced at trial established the following: At approximately 3:15 A.M. on July 18, 1976, the complainant, a young artist, was entering her apartment at 437 South Street in Philadelphia.  As she unlocked the door to the building and turned to relatch it, a man forced his way in with a knife and told her to shut up.  The victim stepped back a pace, put up her hands, and inquired, "What do you want?  Money?", to which her assailant replied, "Don't say a word or you'll be cut."  At this point, the intruder pulled the victim's hat, sporting a wide brim, over her eyes, and forced her onto the hallway floor where he raped her.  Following this, he pulled up her tee-shirt and held the knife against her stomach for several seconds, and then fled.  Throughout the ordeal, the intruder repeated the words, "Shut up" in a low, whispered tone with a definite rhythm or cadence described by the complainant as "marked—you could almost count, one, two, three, four, five in between his words."

The complainant ran to her room, immediately called the police, and provided them with a description of the assailant.  Responding to the call was Officer Michael Lutz of the

1.  Crimes Code, 18 Pa.C.S.A. §§ 2701, 907, 3123, 3121, respectively.

Philadelphia Police Department. At 3:50 A.M. that same morning, based upon the victim's description, he arrested appellant and another individual in front of Pat's Steaks, an establishment located at 6th and Catherine Streets, three and one-half blocks distant from the scene of the rape. Lutz transported the two suspects to Philadelphia General Hospital, where the victim was by that time being treated. When confronted with these two individuals, she immediately discounted the other male arrested and, after looking at appellant and hearing his voice, stated she was "ninety percent sure" he was the rapist. About an hour and a half later "when [she] had time to calm down a bit and clear [her] head and think of the face and the build" she became one hundred percent certain it was appellant.

Tests at the hospital showed the presence of sperm in the victim's vagina. Similarly, chemical tests of the underwear appellant was wearing at the time of his arrest revealed the presence of seminal stains and sperm.

The defense was alibi. Appellant presented testimony suggesting that sometime before 2:00 A.M. on July 18, 1976, he visited his girlfriend, Gloria Merritt, at her home at 511 South Fifth Street. Miss Merritt was, at that time, experiencing a numbness of her legs, whereupon appellant suggested she go to the hospital. Appellant's father, Emanuel Jackson, agreed to drive them to Pennsylvania Hospital, (8th and Spruce Streets) where the trio arrived sometime between 1:30 A.M. and 2:00 A.M. Appellant sat near the emergency room receptionist's desk, conversing with several individuals, while Miss Merritt was treated by a doctor. Shortly after 3:00 A.M., the examination completed, Miss Merritt and appellant left the hospital and proceeded on foot to Pat's Steaks, a distance of some eight blocks. Appellant had only sufficient time to purchase a sandwich before the police arrived and placed him under arrest at 3:50 A.M.[2]

2. We have reviewed the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Glass,* 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. Brown,* 467 Pa. 388, 357 A.2d 147 (1976), and have taken as true all the evidence and all the reasonable

■ Appellant first contends the police lacked probable cause to arrest him. The test is well-settled. In determining the presence of probable cause, the crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator. *Commonwealth v. Wilder,* 461 Pa. 597, 337 A.2d 564 (1975); *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975); *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Gray,* 262 Pa.Super. 351, 396 A.2d 790 (1978). In considering probable cause, we deal not with certainties, *Commonwealth v. Tolbert,* 235 Pa.Super. 227, 341 A.2d 198 (1975), but rather with a common sense determination of reasonableness. *Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974).

■ In the instant case, the description supplied by the victim to the police was as follows: Negro male, 5' 7", 130 lbs., wearing red and yellow plaid shirt, dark pants, small mustache, black, horn-rimmed glasses. Appellant, in large measure matching this description, was arrested less than one-half hour following the rape and only three and one-half blocks distant therefrom. This case thus closely resembles those where our courts have found probable cause based upon a very detailed description or a description coupled with circumstances. See, e. g. *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979) (four or five negro males, one in green army fatigue jacket with hood pulled up, one in white tee-shirt, one 6' 4" tall, a brown overcoat with red knit cap); *Commonwealth v. Bynum,* 265 Pa.Super. 13, 401 A.2d 776 (1979) (two men, one wearing white hat and black coat, one wearing black coat, dungarees, sneakers; suspect

inferences therefrom upon which, if believed, the jury could structure its verdict, *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Smith,* 484 Pa. 70, 398 A.2d 948, (1979) and have found the evidence sufficient to prove beyond a reasonable doubt that appellant is guilty of the crimes with which he stands convicted. This contention, mentioned briefly at the conclusion of appellant's brief, is thus without merit.

arrested only ten minutes walking distance from crime scene); *Commonwealth v. Tookes,* 236 Pa.Super. 386, 344 A.2d 576 (1975) (Negro male wearing red knit hat and brown leather coat and carrying large object; suspect arrested three blocks from crime scene, 5 or 10 minutes after call); see also, *Commonwealth v. Gray,* supra; *Commonwealth v. Washington,* 259 Pa.Super. 407, 393 A.2d 891 (1978); *Commonwealth v. King,* 247 Pa.Super. 443, 372 A.2d 908 (1977); *Commonwealth v. Brown,* 230 Pa.Super. 214, 326 A.2d 906 (1974). This is then not a case where a sketchy, meagre description supplied by a victim or witness simply will not support an arrest. See, e. g., *Commonwealth v. Sams,* 465 Pa. 323, 350 A.2d 788 (1976) (negro males running south on Eleventh St.); *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974) (white male, blondish thinning hair, medium height, "real skinny", 30 years old; suspect arrested far from scene of crime, several days later); *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978) (negro male, 5' 8", wearing dark coat); see also, *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969); cf. *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970). Nor is this a case where the suspect arrested did not match the description supplied to the police. See, e. g., *Commonwealth v. Pinney,* 474 Pa. 210, 378 A.2d 293 (1977) (police looking for two men: one with long, shaggy, black hair; one 5' 11", 180 lbs., long thin hair, mark on face; appellant, 5' 7", 150 lbs., light brown hair, no mark on face, did not sufficiently resemble either suspect number one or two); *Commonwealth v. Youngblood,* 241 Pa.Super. 72, 359 A.2d 456 (1976) (25 year-old bearded male "eyeballing" store did not sufficiently resemble description of 14 year old youth running from scene of robbery). Appellant in the instant case differed from the police radio description in that he was wearing a hat and a different pair of glasses. Such minor discrepancies can hardly vitiate an otherwise proper arrest. We are satisfied the description, coupled with appellant's proximity in time and place to the crime, provided "that conclusive quality which would necessarily draw attention to a particu-

lar individual." *Richards,* supra, 458 Pa. at 463, 327 A.2d at 67.

Appellant next contends it was error for the court to admit a police photograph of him showing the so-called "Bertillon" information of his height and weight.[3] Apparently, appellant does not object to the introduction of the photograph itself[4] but rather to the hearsay nature of the height and weight measurements at the time of arrest, included in the bottom of the picture. Detective Shubert, the officer who directed the investigation and through whom the photograph and accompanying measurements were introduced, testified he did not himself calculate the measurements of appellant and was not present when they were taken. Since the photograph was introduced by the Commonwealth for the purpose of establishing appellant's height and weight at the time of arrest, we agree with appellant, and the Commonwealth concedes, that the information contained in the bottom of the picture is hearsay and thus inadmissible unless falling into a recognized exception. We think the official statement exception provides the appropriate doorway to admissibility:

> The policy behind this exception [is] that of avoiding the inconvenience to and disruption of public affairs by requiring public officials to appear in court . . .. For a document to be admissible under the official statement exception "it is necessary that the evidence show that it was prepared pursuant to an official duty." *Githens, Rexsamer & Co. v. Wildstein,* 428 Pa. 201, 205, 236 A.2d 792, 795 (1968); see V Wigmore, Evidence § 1630, et seq. (3d ed. 1940).

**3.** The Bertillon system is a "method of anthropometry, used chiefly for the identification of criminals and other persons, consisting of the taking and recording of a system of numerous, minute, and uniform measurements of various parts of the human body, absolutely and in relation to each other, the facial, cranial, and other angles, and of any eccentricities or abnormalities noticed in the individual." 10 C.J.S. p. 346; Black's L.D. (4th ed.).

**4.** The court instructed the jury that it was not to presume appellant had a police photograph prior to his arrest when he, in fact, did not. Trial counsel agreed with this caution. N.T. 501.

*Commonwealth v. Slider,* 229 Pa.Super. 93, 96, 323 A.2d 376, 377 (1974); *Commonwealth v. Perdok,* 411 Pa. 301, 192 A.2d 221 (1963); *Commonwealth v. Lee,* 244 Pa.Super. 460, 368 A.2d 812 (1976); Feldman, Pa. Trial Guide, § 7.70 (1975). In this Commonwealth, wardens or other officers in charge of prisons are authorized to adopt the Bertillon method of measurements and registration, Act of May 7, 1889, P.L. 103 § 4 (61 P.S. § 14). Moreover, an official duty need not always arise from an express statute or regulation. "It is clear that no express statute or regulation is needed for creating the authority or duty to make the statement. The existence of the duty, and not the source of its creation, is the sanctioning circumstance. Not all, nor the greater part, of an officer's conceded duties are expressly imposed upon him by written law. They may arise from the oral and casual directions of a superior or from functions necessarily inherent in the office. Where the nature of the office fairly requires or renders appropriate the making or recording of a specific statement, that statement is to be regarded as made under official duty." V Wigmore, § 1633 (3d ed., 1940). Detective Shubert testified to the routine manner of weighing and measuring a suspect at the Philadelphia Police Administration Building and to the recording of these facts on the Bertillon Card. N.T. 498–9. We are satisfied, in light of the nature of the criminal identification process upon arrest, that the height and weight of appellant was taken pursuant to an official duty and hence was properly before the jury. There was no error.

■■■ Appellant next assigns as error the admission of hospital records showing the presence of sperm in the victim. We have previously decided this identical issue in favor of the record's admissibility. *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976). Appellant's challenge to the hospital record, on constitutional grounds, was not posited at any time during the course of the trial and thus we agree with the post verdict court that this theory of attack is waived. Opinion at 8, fn. 7; *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); cf. *Commonwealth v.*

*Seville,* 266 Pa.Super. 587, fn. 6, 405 A.2d 1262, fn. 6 (1979). Similarly, appellant's assertion that the admission of certain school records violated his right to confront his accusers is waived since his objection below was grounded only in the Business Records as Evidence Act, 28 P.S. § 91b and relevancy. Opinion at p. 10; cf. *Commonwealth v. Austin,* 484 Pa. 56, 398 A.2d 941 (1979).

Appellant next contends the court improperly restricted his counsel's cross-examination of Commonwealth witnesses on two occasions. Preliminarily, we note that the scope and limits of cross-examination are within the discretion of the trial judge and will not be reversed in the absence of a clear abuse of that discretion or an error in law. *Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976); *Commonwealth v. Manley,* 252 Pa.Super. 77, 380 A.2d 1290 (1977); *Commonwealth v. Bellis,* 252 Pa.Super. 15, 380 A.2d 1258 (1977). The first instance where the court restricted counsel occurred during the testimony of Detective Shubert. Counsel attempted to elicit from him the fact that later in the day of appellant's arrest, July 18, 1976, he was released without being charged and was not rearrested until one month later on August 20, 1976. Whatever error may have occurred in the exclusion of such testimony from the jury was cured when appellant himself testified to these facts. N.T. 2/11/77, pp. 35, 60. During Commonwealth rebuttal, no attempt was made to disprove the release and rearrest and trial counsel ably argued the significance thereof during her summation. N.T. 2/14/77, pp. 18, 13, 45–6. Appellant also complains the court improperly restricted counsel's cross-examination of the complainant. When the victim summoned the police minutes after the rape, she told the police operator she had just been raped by "a spade." The court refused to permit counsel to elicit this information from the victim, despite counsel's contention, which is renewed on this appeal, that the remark indicated racial prejudice on the part of the victim. This argument, however, is belied by the record since the complainant refused to identify, and, indeed, immediately rejected two other black

suspects who had been brought to her by the police prior to viewing and identifying the appellant. We can only agree with the post-verdict court that counsel's efforts to bring the remark before the jury was but an attempt to inject a racial issue into the trial and would have misled the jury. The court's action was well within the bounds of its discretion.

Appellant also raised two instances of alleged ineffectiveness of his trial counsel.[5]

It is by now axiomatic that the test for evaluating a claim of ineffective assistance of counsel is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). In making this assessment we are not to employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, *Washington v. Maroney, supra,* but whether there was a reasonable basis for the course of action actually selected. *Commonwealth v. Hosack,* 485 Pa. 128, 401 A.2d 327, (1979); *Commonwealth v. O'Neal Weathers El,* 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Treftz,* 485 Pa. 297, 401 A.2d 1325 (1979); *Commonwealth v. Williams,* 485 Pa. 137, 401 A.2d 331 (1979); *Commonwealth v. Tome,* 484 Pa. 261–265, 398 A.2d 1369, 1371–72 (1979); *Commonwealth v. Betrand,* 484 Pa. 511, 399 A.2d 682 (1979); *Commonwealth v. Perrin,* 484 Pa. 188, 398 A.2d 1007, (1979); *Commonwealth v. Ray,* 483 Pa. 377, 396 A.2d 1218 (1979); *Commonwealth v. Yocham,* 483 Pa. 478, 397 A.2d 766 (1979); *Commonwealth v. Chumley,* 482 Pa. 625, 394 A.2d 497 (1978); *Commonwealth v. Coleman,* 482 Pa. 581, 394 A.2d 474 (1978); *Commonwealth v. Sisco,* 482 Pa. 459, 393 A.2d 1197 (1978). If a reasonable basis for counsel's trial strategy decision exists, that decision is imputed to the client. *Common-*

5. As appellant is represented on this appeal by new counsel, the issue of trial counsel's effectiveness is properly before us. *Commonwealth v. Hubbard,* 472 Pa. 259, n.6, 372 A.2d 687, n.6 (1977); *Commonwealth v. Lowry,* 260 Pa.Super. 454, n.2, 394 A.2d 1015, n.2 (1978).

*wealth v. Sullivan,* 450 Pa. 273, 299 A.2d 608, cert. denied, 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973). *Commonwealth v. Musi,* 486 Pa. 102, at 107, 404 A.2d 378, at 380 (1979).

▇▇▇ Appellant argues his counsel's cross-examination of the complainant as to her identification of him was so scant and lacking in depth as to render her assistance ineffective. This contention is simply not supported by the record. Our review indicates counsel cross-examined the victim as to the lighting at the crime scene, N.T. 2/8/77, pp. 32–35, 67; her description of the assailant, pp. 37–44; the confrontation at the hospital and the discrepancies between appellant's appearance and that of the rapist, pp. 47–55, 69; and the circumstances under which she became "one hundred percent" sure appellant was the rapist, pp. 57–8. This full, probing cross-examination cannot be deemed ineffective merely because it has occurred to appellate counsel that more questions might have been asked. "That attorneys disagree on trial strategy does not mean that the course chosen amounts to incompetency." *Commonwealth v. Ramsey,* 259 Pa.Super. 240, 251, 393 A.2d 806, 812 (1978).

▇▇▇ Appellant also contends his counsel was derelict in not introducing into evidence at trial certain allegedly exculpatory evidence in her possession. This "evidence" consisted of certain correspondence and investigation indicating that rapes committed by one Simpson in 1976 in the general vicinity of South Street were so similar to the instant crime as to suggest Simpson was the rapist herein and not appellant. However, the record is clear that trial counsel did not come into possession of this material until after appellant's trial. Several hearings on counsel's post-trial *Brady*[6] motions were held and relief was denied. Counsel cannot be deemed ineffective for failing to introduce material at trial about which she was not then aware. Should appellant or his counsel subsequently discover evidence suggesting appellant's innocence, appropriate relief

6. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

may be sought under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. 1580 (19 P.S. §§ 1180–1 et seq.).

■ Lastly, appellant posits the following issues, none of which were set forth in his post-trial motions. The claims are therefore waived. *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Hagans,* 483 Pa. 415, 397 A.2d 412 (1979); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).

1. Whether the identification of appellant by the victim was unnecessarily suggestive and, if so, whether the in-court identification was tainted thereby;

2. Whether the court's charge on identification testimony was erroneous;

3. Whether the court's charge on reasonable doubt was erroneous.

Judgment of sentence affirmed.