465 A.2d 1043

**COMMONWEALTH of Pennsylvania**

v.

**Purnell WHELTON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 22, 1983.

Filed Sept. 9, 1983.

44

Joseph V. Furlong, Jr., Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Purnell Whelton, was convicted in the Municipal Court of Philadelphia of Carrying a Firearm Without a License (18 Pa.C.S.A. § 6106) and Carrying a Firearm on a Public Street or Place in Philadelphia (18 Pa.C.S.A. § 6108).[1] Sentence consisted of a $50.00 fine for each charge, as well as the payment of $10.00 to the Victims' Compensation Fund. A timely appeal, captioned a "Petition For Writ Of Certiorari," was filed with the Court of Common Pleas of Philadelphia County, Criminal Division.[2] After a hearing

---

1. Appellant was also charged with, but found not guilty of, Possession of an Instrument of Crime and Possessing a Prohibitive Offensive Weapon (18 Pa.C.S.A. §§ 907 & 908). Because none of the offenses charged carried a penalty of more than five (5) years incarceration, the Municipal Court of Philadelphia was vested with jurisdiction to hear the charges in the first instance. Pa.R.Crim.P. 6001.

2. The procedure for appeal from the Municipal Court to the Court of Common Pleas by Writ of Certiorari has been abolished in cases involving summary offenses. See Pa.R.Crim.P. 67(g).

before the Hon. Charles L. Durham, appellant's Petition
was denied. This appeal followed. We affirm.

The facts, viewed in the light most favorable to the
verdict winner, consist of the following: At approximately
11:30 a.m. on the 5th of March, 1980, Officer John Clinks-
cale, of the Philadelphia police, received "flash information"
over his car radio that a pocketbook snatching had just
occurred at 9th and Montgomery Avenues. The culprit was
identified as a Negro male, 20 to 30 years old, 5 feet 6
inches tall, 150 to 160 pounds, black hair, wearing a ¾
length gray coat, sneakers and clean shaven with a scar on
his chin. (N.T. 6 & 8)

Officer Clinkscale, being in the vicinity, began to survey
the area for about 15 to 20 minutes before observing the
appellant on the corner of 9th and Columbia Avenues, next
to a bus stop along with two elderly people and a female,
one block from the scene of the reported theft. Appellant
matched the description given over the radio. (N.T. 11–12)
As the officer approached the appellant on 9th Avenue, he
said, "Sir, I'm stopping you to check about a robbery that
happened up the street, a pocketbook snatch." (N.T. 18)
While talking to appellant, the officer "patted him down for
[his, i.e., the officer's] protection." (N.T. 19) During the
pat down, the officer felt a hard object inside appellant's
left coat pocket. When the object was removed, it proved
to be a .25 caliber automatic pistol, two and a quarter inches
in length, with four live rounds in the clip and one in the
chamber. At this point, the officer took the appellant back
to 9th and Montgomery for an on-the-scene identification.
However, this could not be accomplished since the witness
had already been taken to "East Detectives." Although the
appellant was not identified as the culprit, and, in fact,
*"turned out not to be the robbery perpetrator,"* (Emphasis
added) (Lower Court Opinion at 2), he was, nevertheless,
"locked up for carrying a weapon." (N.T. 7)

Prior to the close of the Commonwealth's case, counsel
introduced evidence that, as of the date of the incident, a
check of the records indicated that appellant was not issued

a valid license, pursuant to either Section 6109(b) or Section 6106(c) of the Crimes Code, to carry a firearm. (N.T. 21)

At the Municipal Court hearing, appellant took the stand and testified that on the day and time in question he had just left his daughter at his mother's house. After leaving, he was in the process of cutting across a lot to catch a bus. "While running across the lot [he] noticed this object on the ground. [He] didn't want to pick it up but [he] did." (N.T. 22) It turned out to be the weapon in issue here. He went on to testify that he had all the intentions of turning the weapon over to the police department as soon as possible, but, because of the manner in which Officer Clinkscale confronted him concerning the reported robbery, i.e., with his hand on his pistol, appellant "was more or less scared" and did not surrender the weapon prior to the search.

The trier of fact, after hearing all of the evidence, denied appellant's motion to suppress and adjudged him guilty of the two weapon offenses. These rulings were affirmed by the Court of Common Pleas of Philadelphia County.

On appeal, appellant challenges the denial of his motion to suppress and the legality of the sentence imposed.

In examining appellant's argument concerning the propriety of the suppression ruling, we utilize the following criteria; *viz.*:

> As was stated in *Commonwealth v. Johnson*, 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976):
>
>> "In reviewing th[e] ruling [of a suppression court,] our initial task is to determine whether the factual findings are supported by the record. 'In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error." (Footnote omitted)

*Commonwealth v. Hamlin*, 302 Pa.Super. 86, 90, 448 A.2d 538, 540 (1982), petition for reargument denied August 17, 1982. *Accord Commonwealth v. Walker*, 470 Pa. 534, 539, 368 A.2d 1284, 1287 (1977); *Commonwealth v. Kichline*, 468 Pa. 265, 280, 361 A.2d 282, 290 (1976).

■ However, before delving into the suppression question, we need to decide if we are dealing with a probable cause to arrest or "stop and frisk" situation. "Although this appears to be primarily a question of semantics it is important in that if the incident is viewed as an arrest and subsequent search the standards used to determine whether the officer['s] actions were proper would be the standards governing warrantless arrests while if the incident is viewed as a protective search and arrest the standard used would be those governing stop-and-frisk cases." *Commonwealth v. Cruse*, 236 Pa.Super. 85, 87, 344 A.2d 532, 533 (1975). If the former situation predominates, i.e., a warrantless arrest and an accompanying search incident thereto, the probable cause to arrest depends "upon whether, at the moment the arrest was made ... the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). If the latter situation be the case ("stop and frisk"), the officer must observe unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot at the time of the seizure ("stop"), *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982); *Commonwealth v. Williams*, 298 Pa.Super. 466, 444 A.2d 1278 (1982); *Commonwealth v. Dennis*, 289 Pa.Super. 305, 433 A.2d 79 (1981); *Commonwealth v. Galadyna*, 248 Pa.Super. 226, 375 A.2d 69 (1977); and a subsequent search ("frisk") withstands constitutional scrutiny:

... only when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger": *Terry v. Ohio,* supra n. 3 at 27, 88 S.Ct. at 1883. In other words, the sole justification for such a search is the protection of the police officer or others nearby. Moreover, the arresting officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Good faith on the part of the officer, in itself, is not enough: *Terry v. Ohio,* supra n. 3.

*Commonwealth v. Berrios,* 437 Pa. 338, 341, 263 A.2d 342, 343 (1970).

■ At first blush, it appears that appellant's suppression claim is premised upon a probable-cause-to-arrest argument. (*See* Appellant's Brief at 10) However, in support of such a contention, appellant relies heavily upon the decision of *Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298 (1978), which, curiously enough, is a "stop and frisk" case. Our review of the facts leads us to conclude that we are dealing with a "stop and frisk" rather than a probable-cause-to-arrest situation.[3] Further, we find the decision in *Anderson* to be distinguishable from the case at bar.

**3.** This necessarily undermines that portion of the Commonwealth's position advanced on appeal that there was sufficient probable cause to justify appellant's arrest and subsequent seizure of the weapon from his person as an incident thereto.

To explicate, the identification information upon which Officer Clinkscale relied to detain the appellant was supplied by radio message. For this information to justify the officer's arrest of the appellant prior to the search, the Commonwealth was required to prove that the radio message itself had a proper basis. No less is required by *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971). *Accord Commonwealth v. Rutigliano,* 310 Pa.Super. 364, 456 A.2d 654 (1983).

We note that although the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) has abandoned the two-pronged test of *Aguilar-Spinelli* for a "Totality of Circumstances" test, this turn of events has no impact on our decision today.

In *Anderson*, an anonymous call was received by the police that an escapee from a drug rehabilitation program was in a bar at a certain street in Philadelphia. The caller described the person as a Negro male, named "Perry" about 5'10" with a large "bush" hair style and wearing a dark coat. The message was transmitted over the police radio, and, as a result thereof, two officers entered a bar on the street specified and "decided that [appellant] fitted the above description." The police approached appellant, asked his name, which he gave as "Charles Hayes," and whether he had any weapons. Before appellant had an opportunity to respond to the last question, an officer touched his right jacket pocket, felt an object which appeared to him to be a gun and retrieved therefrom a loaded, operable .22 caliber revolver. A further search of appellant's person produced

In the instant case, the Commonwealth either at the Municipal Court proceeding or at the Writ of Certiorari hearing in the Court of Common Pleas made no effort to establish the basis for the radio call. Thus, we are confronted with a situation analogous to a radio call based on a tip from an anonymous informer. In this setting, the police's hearsay information from an anonymous informer will supply the probable cause to justify a warrantless arrest, provided it meets the test in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1964) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). That is, first, the officer must know the underlying circumstances from which the informer concluded that the suspect participated in the crime. Second, the officer must have some reasonable basis for concluding that the source of the tip was reliable. *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973).

Here, the officer neither knew the underlying circumstances from which the anonymous informer concluded the appellant was the thief nor did the officer have a reasonable basis for concluding that the source of the tip was reliable. Accordingly, the Commonwealth's probable cause argument is specious since the warrantless arrest could not be based on information from an anonymous informer in accordance with *Aguilar-Spinelli*, and, in turn, the evidence obtained from a subsequent search could not be offered into evidence on that basis. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Cruse*, 236 Pa.Super. 85, 344 A.2d 532 (1975).

Having determined that the necessary probable cause did not exist for a warrantless arrest, *see e.g.*, *Commonwealth v. Barensfeld*, 278 Pa.Super. 289, 420 A.2d 544 (1980), we must now determine if the officer's conduct was justifiable under the "stop and frisk" standards. *See* discussion *infra*.

papers indicating he was known as "Perry" and that his correct name was "Gregory Anderson."

Our Supreme Court, after reviewing the applicable law on "stop and frisk," decided that the police acted improperly in "stopping" Anderson and suppressed the evidence removed from his person. In discussing its rationale for the ruling, the Court made mention that the information was supplied by an anonymous caller whose reliability was unknown and only a *general* description was given, one which would fit any number of individuals. Also, we think of at least equal importance is the fact that the *Anderson* Court "d[id] not believe that the mere fact that an individual was on an unauthorized leave from a drug rehabilitation program would justify a reasonable belief that he was armed and dangerous." *Id.*, 481 Pa. at 296, 392 A.2d at 1300.

■ Instantly, albeit the officer was acting on what was in essence an anonymous tip (*see* note 3, *supra*), we had, unlike in *Anderson*, a *detailed* description of an individual who had just minutes before been linked with the *commission of a crime* (robbery), perpetrated but *one block* from the situs of the purported offense.[4] Given these facts, we find the case at bar to be more akin to, as well as controlled by, the holding in *Commonwealth v. Prengle*, 293 Pa.Super. 64, 437 A.2d 992 (1981).

■ In *Prengle*, a 5:50 a.m. radio bulletin advised police that a burglary had been committed at a particular address. The bulletin further advised that an unknown male would

---

4. On the question of the specificity of the identification provided the authorities, *see Draper v. United States*, 358 U.S. 307, 309 n. 2, 79 S.Ct. 329, 331 n. 2, 3 L.Ed.2d 327 (1959), *Commonwealth v. Mears*, 283 Pa.Super. 416, 424 A.2d 533 (1981), *Commonwealth v. Sabb*, 269 Pa.Super. 206, 409 A.2d 437 (1979) (probable cause to arrest context; citing cases) and compare with *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970) and *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969).

We wish to emphasize that the "stop and frisk" is not justifiable solely on the basis of the specificity of the identification information. Rather, it is to be looked at in conjunction with the offense reported to have been committed, the proximity of the crime to the sighting of the suspect and the time when, as well as the place where, the confrontation occurs.

be driving a truck "loaded with tires and bearing the logo 'Center City Tire Company.'" Officer Jaudon, hearing the report, proceeded to a location on a "hunch" that the driver would have to pass that way in order to make his escape. Within minutes, Officer Jaudon stopped a truck bearing the aforementioned logo, asked the driver to exit the cab and conducted a "frisk" of the driver's outer clothing. The driver-appellant was found to be in possession of a screwdriver and "what appeared to be a switch with a key."

The Court in *Prengle,* in upholding the "stop" and subsequent "frisk" of the accused, recounted those facts which it looked to in making its decision; namely:

1) a "crime of violence" (burglary) had been reported committed at a location in the vicinity of the "stop." "In this connection, it is important to note that Officer Jaudon rightfully could assume not only that the perpetrator was a fleeing felon, but also that he had engaged in violent criminal activity." *Id.,* 293 Pa.Superior Ct. at 69 n. 4, 437 A.2d at 994 n. 4.

2) a truck matching the *exact* description of the vehicle suspected of having been stolen was stopped within 15 minutes of the radio bulletin announcing the theft.

Additionally, the Court responded to a question proffered by the appellant that is quite germane to the case here; to-wit:

Appellant now contends that because the officer failed to establish at the suppression hearing that he *personally* observed "unusual conduct" that led him to conclude that appellant was armed and dangerous, his action in stopping appellant for investigatory purposes and patting him down for weapons was illegal. We disagree.

The police officer's failure to observe personally appellant engaging in "unusual conduct" does not vitiate the reasonableness of the officer's action in the instant case. The facts known to the officer prior to the frisk in question show that a crime of violence was reported, and, within minutes of the reported crime, the officer saw a moving vehicle matching the exact description of the

stolen truck in the vicinity of the crime. Under these circumstances, *we will not ignore the probable existence of danger* and require that the officer *first* ask for identification prior to conducting a protective frisk. As Justice Harlan so aptly stated in *Terry v. Ohio:*

> [w]here such a stop is reasonable ... *the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence.* Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and routine. *There is no reason why an officer rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet. Terry v. Ohio,* 392 U.S. 1, 36, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 913 (1968) (Harlan, J., concurring) (emphasis added).

> The facts of this case are illustrative of a proper investigatory stop and an incident frisk.

*Commonwealth v. Prengle, supra,* 293 Pa.Super. at 69, 437 A.2d at 994–995.

As in *Prengle,* the officer here was informed that a crime of violence had been committed (18 Pa.C.S.A. §§ 3701 and 6102), and, within minutes of the reported crime, the officer saw an individual that matched the exact description (both as to physical features and attire) of the suspect in the vicinity of the crime. Therefore, we are satisfied the description, coupled with appellant's proximity in time and place to the crime, provided " 'that conclusive quality which would necessarily draw attention to a particular individual.' " (Citation omitted) *Commonwealth v. Sabb,* 269 Pa. Super. 206, 213, 409 A.2d 437, 441 (1979). Having established the propriety of the "stop," we have no hesitation in validating the officer's "frisk" of the accused for, as stated quite aptly by the Court in *Commonwealth v. Prengle, supra,* "we will not ignore the probable existence of danger and require that the officer *first* ask for identification

prior to conducting a protective frisk." (Emphasis in original) *Id.*, 293 Pa.Superior Ct. at 69, 437 A.2d at 995.

Because street encounters are so incredibly rich in diversity, each case is to be scrutinized in light of its own facts. *Terry v. Ohio, supra.* Therefore, we wish to make it clear that the present ruling is not to be interpreted as a *carte blanche* for police to act with impunity in ferreting out criminals in the course of investigating a crime. Quite the contrary, given the particular facts here, we find that Officer Clinkscale acted properly in "frisking" appellant for his own safety, not to mention the safety of others in the immediate area of the "stop"—two elderly people and a female waiting for a bus.[5]

Lastly, appellant asserts that his convictions for violating both 18 Pa.C.S.A. § 6106[6] (Carrying a Firearm Without a License) and 18 Pa.C.S.A. § 6108[7] (Carrying a Firearm on a

**5.** We wish to note, as did the Court in *Commonwealth v. Prengle*, 293 Pa.Super. 64, 70 n. 5, 437 A.2d 992, 995 n. 5 (1981), that we find *Commonwealth v. Pegram*, 450 Pa. 590, 301 A.2d 695 (1979) not to control the case *sub judice.* In *Pegram* the police received a call that a burglary was in progress at a particular home. *No description* of the intruder(s) was given. When the police arrived no one was on the premises. However, they noticed the appellant walking down an alley which ran parallel to the street where the burglarized house was situated. The appellant ran from the police when he initially saw them, but later on that same evening he inadvertently ran into them again and, this time, voluntarily approached the police cruiser when they called him. The officers asked the accused his name and "patted him down." The *Pegram* Court decided that the officers did not possess sufficient information at the moment the "frisk" occurred to warrant such an intrusion.

Instantly, unlike in *Pegram*, we had the transmission of a *specific description* of the culprit who purportedly committed a crime of violence. The "stop and frisk" was accomplished within a short time and distance of the reported robbery, on a public street in the presence of innocent bystanders. The result we reach, in light of the relevant and different facts recounted instantly, is not at odds with the holding in *Pegram*. *See Commonwealth v. Prengle, supra.*

**6.** Section 6106 provides in relevant part:
(a) **Offense defined.**—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter.

**7.** Section 6108 provides:

Public Street in Philadelphia) contravene his rights under the Double Jeopardy Clause of the United States Constitution to be free from being punished twice for the same offense. In particular, appellant avers: "... it is undisputed that [he] was apprehended on a public street within the City of Philadelphia in possession of an unlicensed firearm.... [Thus,] as only one wrong [was] committed against the Commonwealth, there should be only one sentence.... As the unlicensed possession occurred in a public place and both sections proscribe the same conduct, there [was] only one violation." (Appellant's Brief at 14–15) We disagree.

The test for merger of offenses was stated in *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104–105, 21 A.2d 920, 921 (1941):

The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are "successive steps in the same transaction" but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The "same transaction" test is valid only when "transaction" means a *single act*. When the "transaction" consists of two or more criminal acts, the fact that the two acts are "successive" does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, e.g., larceny is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge. If a defendant commits a burglary and while in the burglarized dwelling he commits the crimes of rape or kidnapping, his crimes do not merge, for neither of them is necessarily involved in the other. When one of two

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both*.   (Emphasis in original)

*Accord Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").   Thus, if one crime necessarily involves another the two offenses merge. *Commonwealth ex rel. Moszczynski v. Ashe, supra*.   Moreover, it is well settled that for one crime necessarily to involve another, the essential elements of one must be the essential elements of the other. *Commonwealth v. Walls*, 303 Pa.Super. 284, 449 A.2d 690 (1982), petition for *allocatur* denied January 31, 1983.   " 'That is, if no additional facts are needed to prove the additional offense, it merges into the primary offense for sentencing purposes.   Only one sentence may therefore be imposed.' "   *Commonwealth v. Walls, supra*, 303 Pa.Super. at 294, 449 A.2d at 695, quoting *Commonwealth v. Eberts*, 282 Pa.Super. 354, 358, 422 A.2d 1154, 1155–1156 (1980).

In applying the aforesaid principles to the case here, we observe that in order to obtain a conviction for violating Section 6108, the Commonwealth only had to prove that the appellant was carrying a firearm on the public streets of Philadelphia.   The Commonwealth *did not* have the affirmative burden of proving as an element of the offense that the accused *did not* have a license to carry the firearm. *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979).   Whereas, to establish a violation of Section 6106, the Commonwealth had the burden of proving that Whelton was "without a license" to carry the firearm "concealed" on or about his person.   In other words, the absence of a license is an essential element of the crime of carrying a firearm without a license. *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975).   Thus, there is an

essential element in Section 6106 (proof of licensure) that need not be proven to obtain a conviction under Section 6108. As a result, the convictions for violating Sections 6106 and 6108 do not merge for sentencing purposes. *See Missouri v. Hunter, supra; Blockburger v. United States, supra; cf. Commonwealth v. Harrison,* 262 Pa.Super. 236, 396 A.2d 732 (1978) (evidence sufficient to sustain convictions for 18 Pa.C.S.A. §§ 6106 & 6108).

Order affirmed.