J-A18033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY M. MIRANDA, | : | |
| | : | |
| Appellant | : | No. 1120 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 12, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003346-2017

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 30, 2019**

Anthony M. Miranda ("Miranda") appeals from the judgment of sentence imposed following his conviction of four counts of driving under the influence of alcohol or controlled substances ("DUI"), and one count each of driving while operating privilege is suspended or revoked, habitual offenders,[1] possession or distribution of a small amount of marijuana, and possession of drug paraphernalia.[2] We affirm.

The trial court thoroughly set forth the relevant facts and procedural history underlying this appeal in its Opinion, which we incorporate as though fully set forth herein. *See* Trial Court Opinion, 12/27/18, at 1-9.

---

[1] Miranda had five prior DUI offenses within the past ten years.

[2] *See* 75 Pa.C.S.A. §§ 3802(a)(1), (d)(1), (d)(2), (d)(3); *id.* § 1543(a); *id.* § 6503.1; 35 P.S. § 780-113(a)(31), (a)(32).

On appeal, Miranda presents the following issue for our review: "Whether the trial court erred when it denied [] Miranda's Motion to Suppress evidence obtained during a vehicle stop[,] where the police did not have reasonable suspicion of criminal activity to justify the stop, in violation of the Federal and Pennsylvania Constitutions?" Brief for Appellant at 5.

Our standard of review in suppression matters is well settled. "We must determine whether the factual findings of the suppression court are supported by the record and, assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from those facts are in error." *Commonwealth v. Pakacki*, 901 A.2d 983, 986 (Pa. 2006) (citation and brackets omitted). "With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Swartz*, 787 A.2d 1021, 1023 (Pa. Super. 2001) (*en banc*) (citation omitted).

"The threshold justification for a vehicle stop is reasonable suspicion." *Commonwealth v. Hendricks*, 927 A.2d 289, 290 (Pa. Super. 2007). The police may stop a motorist on reasonable suspicion of DUI. 75 Pa.C.S.A. § 6308(b); *Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008) (stating that "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible."). "In order to determine whether the police

officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, [a court] must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." ***Commonwealth v. Hilliar***, 943 A.2d 984, 990 (Pa. Super. 2008) (citation, brackets and ellipses omitted); ***see also Commonwealth v. Zhahir***, 751 A.2d 1153, 1156 (Pa. 2000) (stating that, fundamentally, the inquiry for courts is whether the officer's actions were reasonable in light of the facts). "[T]he totality of the circumstances test does not limit [an] inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, *even a combination of innocent facts, when taken together, may warrant further investigation by the police officer*." ***Hilliar***, 943 A.2d at 990 (emphasis added, citation omitted).

Here, Miranda argues that the trial court erred in determining that reasonable suspicion existed, particularly where Moon Police Officer Ian Lucas ("Officer Lucas") had not observed Miranda commit any Motor Vehicle Code ("Code") violations prior to stopping his vehicle. ***See*** Brief for Appellant at 16-19. Miranda contends that, because it was very cold on the morning in question, it was not unusual or suspicious for a motorist to be sitting in a parked car with its engine running, in order to warm it up. ***Id.*** at 9. Moreover, Miranda emphasizes that, despite the prior vehicle break-ins that had occurred in the relevant neighborhood, the police did not have any description of the person(s) or vehicle(s) that were involved in these offenses. ***Id.*** at 17; ***see***

- 3 -

*also id.* (asserting that there were no vehicle break-ins on the date of the vehicle stop, and that the prior break-ins occurred "over an eight[-]square[-]mile area[.]"). According to Miranda, the vehicle stop was based upon a mere hunch of Officer Lucas, which is insufficient to establish reasonable suspicion. *Id.* at 10.

In its Opinion, the trial court addressed Miranda's claims, summarized the applicable law, and determined that, under the totality of the combined circumstances, Officer Lucas possessed reasonable suspicion to stop Miranda's vehicle, even in the absence of any Code violation. *See* Trial Court Opinion, 12/27/18, at 10-20. We incorporate the trial court's cogent analysis as though fully set forth herein. *See id.* In so ruling, the trial court emphasized the following facts:

> Officer Lucas personally observed the unusual driving conduct of [Miranda's] vehicle and reasonably articulated the context of time, location, and suspicious behavior including, *inter alia*: mid-winter cold temperature; pre-dawn darkness; [Miranda's] idle motoring with no vehicle lights illuminated in a suburban residential no-parking zone[, which was] subject to recent car break[-]ins; [Miranda's] departure from North Jamestown Street upon [seeing] the marked police car; [Miranda's] relocation to an unusual roadway position on the Westminster Road cul-de-sac[,] with [his] vehicle headlights illuminated; [Miranda's] second departure upon [seeing] the marked police car; Officer Lucas confirming [Miranda's] vehicle's out-of-county license plate registration; and subsequently, upon Officer Lucas'[s] third contact[,] when he questioned [Miranda] about his reason for being in the neighborhood at that time of night.

*Id.* at 10-11; *see also id.* at 14 n.3 (wherein the court found that "[t]he record is devoid of any reasonable activity that would have removed suspicion

of [Miranda's] irregular pre-dawn roadway conduct, *e.g.*, newspaper delivery, attendant travel from the residential area to a work location, or even casual joyriding while mindful of the rules of the road.").

It is well established that "[t]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." ***Commonwealth v. Leonard***, 951 A.2d 393, 397 (Pa. Super. 2008) (quoting ***Illinois v. Wardlow***, 528 U.S. 119, 125 (2000)). Here, an officer of reasonable caution in the position of Officer Lucas, given the totality of the above-mentioned evidence, would have been warranted in the belief that it was appropriate to stop Miranda to investigate further. ***See, e.g., Commonwealth v. Zhahir***, 751 A.2d 1153, 1157 (Pa. 2000) (stating that suspicious conduct in an area associated with criminal activity, along with evasive behavior, are relevant factors that contribute to reasonable suspicion); ***Commonwealth v. Hamme***, 583 A.2d 1245, 1247 (Pa. Super. 1990) (holding that erratic driving alone can impart a reasonable suspicion of DUI); ***see also Commonwealth v. Hughes***, 908 A.2d 924, 927-28 (Pa. Super. 2006) (holding that reasonable suspicion to stop a vehicle for DUI existed where, in early morning hours, police observed the vehicle swerving between left and right lanes); ***Commonwealth v. Pine***, 536 A.2d 811, 813, 814 (Pa. Super. 1988) (holding that the combination of the defendant's actions (including his having twice walked away upon seeing the arresting officer's marked patrol vehicle), the late hour, and the officer's personal

knowledge that the neighborhood had been the target of recent burglaries, provided reasonable suspicion to stop defendant); *Hilliar*, *supra* (emphasizing that even a combination of innocent facts, when taken together, may establish reasonable suspicion).

As we discern no abuse of discretion or error of law by the trial court in denying the Motion to Suppress, Miranda's sole issue on appeal entitles him to no relief.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2019

IN COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ORIGINAL
Criminal Division
Dept. Of Court Records
Allegheny County, PA

COMMONWEALTH OF PENNSYLVANIA,

v.

ANTHONY M. MIRANDA,

DEFENDANT

CRIMINAL DIVISION

CC No. 2017-03346

(1120 WDA 2018)

## OPINION

IGNELZI, J.

## PROCEDURAL HISTORY

On February 1, 2018, following a one-day combined Suppression Hearing and Stipulated Non-Jury Trial before this Honorable Court, the Defendant, Anthony M. Miranda ("Defendant") was found guilty of all eight counts charged. Verdict was entered on Counts 1 through 8 as follows:

1) Guilty of Driving Under the Influence of Alcohol or Controlled Substance — 4th and Subsequent Offense, **75 P.S. § 3802(D)(1)**;

2) Guilty of Driving Under the Influence of Alcohol or Controlled Substance — 4th and Subsequent Offense , **75 P.S. § 3802(D)(2)**;

3) Guilty of Driving Under the Influence of Alcohol or Controlled Substance — 4th and Subsequent Offense, **75 P.S. § 3802(D)(3)**;

1

**4)** Guilty of Driving Under the Influence — 4th and Subsequent Offense, **75 P.S. § 3802(A)(1);**

**5)** Guilty of Driving While Operating Privilege is Suspended or Revoked with BAC .02 or Higher – 3rd Offense, **75 P.S. § 1543(B)(1);**

**6)** Guilty of being an Habitual Offender, **75 P.S. § 6503.1;**

**7)** Guilty of Possession or Distribution – Marijuana, **35 P.S. § 780-113(A)(31);** and

**8)** Guilty of Possession of Drug Paraphernalia, **35 P.S. § 780-113(A)(32).**

Preceding a Non-Jury Trial, Defendant, through counsel, Richard E. Romanko, Esq., submitted a Motion to Suppress Evidence. On February 1, 2018, after hearing on the Motion, this Court denied Defendant's Motion to Suppress and proceeded to trial and this Court entered its verdict. On April 12, 2018, filed a Motion for Reconsideration of the Court's Order denying Motion to Suppress Evidence. On July 12, 2018, after hearing, Defendant's Motion for Reconsideration was DENIED. See July 12, 2018 Motion and Sentencing Transcript ("S.T.") at 4-14.

Defendant was sentenced on July 12, 2018, after receipt of the Pre-Sentence Report. Under Count 1, Defendant was sentenced to a mandatory minimum one year period of imprisonment, served by intermediate punishment of house arrest with eligible releases for work, school, medical, or religious reasons; was to

2

undergo a drug and alcohol evaluation; and was assessed a $2,500 fine. Said sentence under Count 1 to run concurrently with the 2 year period of confinement imposed under County 5. S.T. at 26.

Under Count 5 (Driving While Operating Privilege is Suspended with BAC .02), Defendant was sentenced to confinement for 2 years served by intermediate punishment with house arrest and electronic home monitoring with eligible releases for work, school, medical, or religious reasons; and was assessed a $5,000 fine and court costs. S.T. at 25-26.

DUI Counts 2, 3, and 4 were merged into Count 5.

No further penalty was assessed under Counts 6, 7, and 8 (Habitual Offenders, Possession of Marijuana, and Possession of Paraphernalia). S.T. at 26.

The Defendant was granted House Arrest in lieu of a State Prison sentence due to Defendant's Cystic Fibrosis diagnosis.

Defendant did not file a Post-Sentence Motion.

On August 8, 2018, Defendant filed a timely Notice of Appeal. On August 10, 2018, this Court ordered Defendant to file a Concise Statement of Errors Complained of on Appeal Pursuant to PA.R.A.P. 1925(B). On August 31, 2018, Defendant filed his Concise Statement of Errors on Appeal.

3

## ERROR COMPLAINED OF ON APPEAL

Defendant raises the following issue for appeal:

> **Whether the trial court erred in denying Defendant's motion to suppress evidence because the vehicle stop by the police was illegal and conducted in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and Article One, Section Eight of the Pennsylvania Constitution.**

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. See ***Commonwealth v. Lyles***, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014).

## STATEMENT OF FACTS

On Friday, January 27, 2017 at 5:00 a.m., Moon Township Police Officer Ian Lucas was working a 7:00 p.m. to 7:00 a.m. shift on general patrol in a suburban subdivision area known as Wessex Hills of Moon Township, Allegheny County. Suppression/Trial Transcript, pages 5,7 (hereafter "T.T. at 5,7"). The specific area being patrolled was subject to car break-ins within the past couple of weeks. T.T. at 6-7, 22-24. Officer Lucas further described the location of the vehicle break-ins as the northern end of Moon Township. T.T. at 22-24. He described Moon Township as being divided into three areas; northern, central, and southern. *Id.* This location was in the northern end in the area of the criminal break-in activities. *Id.* Officer Lucas was in uniform and traveling in a marked vehicle in a housing plan

4

on North Jamestown Road when, at 5:00 a.m., he observed the Defendant's vehicle stopped in an area where parking was not permitted between the hours of 2:00 a.m. to 6:00 a.m. T.T. at 5,8,24. Officer Lucas identified the vehicle parked in front of 146 North Jamestown Road as a tan Buick sedan with "the engine running, the headlights, taillights, everything was not illuminated, they were off, and there was a male in the driver's seat just sitting there." T.T. at 6.

As Officer Lucas' marked vehicle passed Defendant's vehicle, the Officer found it "odd" that "at 5:00 a.m. the vehicle was running with a sole male occupant in the driver's seat, the headlights not on, and positioned in the roadway." T.T. at 6,7. Officer Lucas also testified that such activity was "odd for this neighborhood." T.T. at 6.

At the time, Officer Lucas had been a police officer for fifteen years, the last nine years with the Moon Township Police Department, with experience involving twenty to twenty-five DUI arrests per year. T.T. at 4. Officer Lucas sought to "talk to this guy real quick, make sure he's not up to any illegal activity." T.T. at 7.

To talk with the vehicle occupant, Officer Lucas drove past the Defendant's vehicle approximately two or three houses and made a U-turn in the middle of the street. T.T. at 7-8. As the Officer made the U-turn, the Defendant's vehicle "was

5

gone." T.T. at 8. Officer Lucas did not observe the direction of the Defendant's departure. T.T. at 8.

Officer Lucas continued his patrol throughout the subdivision and then located the Defendant's vehicle on Westminster Road, a cul-de-sac one half mile from the initial contact with Defendant's vehicle on North Jamestown Road. T.T. at 8-9. Defendant's vehicle had headlights on, was stopped in the cul-de-sac "perpendicular to the round part of the cul-de-sac . . . . in the middle of the circle facing outward," and was "dead center, not in any particular lane." T.T. at 9-10. As the Officer drove down the road toward the cul-de-sac to make a second contact, the Defendant's vehicle transitioned from a stationary position to drive "right past" the Officer's vehicle. T.T. at 10. Officer Lucas turned around in the cul-de-sac and followed the Defendant's vehicle which made a right hand turn off of the cul-de-sac road onto Shafer Road. T.T. at 11.

To this point, Officer Lucas did not have on nor did he activate his overhead lights or siren as he followed the Defendant's vehicle. T.T. 10-11. Officer Lucas followed the Defendant's vehicle for another one half mile to three-quarters of a mile during which time he "ran the license plate to ascertain the owner of the vehicle, and it came back to Canonsburg, Pennsylvania." T.T. at 11.

This Court takes judicial notice that Canonsburg is located in Washington County and not within the confines of Moon Township, Allegheny County.

Upon receipt of the vehicle registration information, Officer Lucas believed he needed to "stop this vehicle and find out exactly what was going on." T.T. at 11. Officer Lucas believed he had reasonable suspicion to do so. T.T. at 11.

At 5:00 a.m. it was dark, and Officer Lucas then activated his marked vehicle's overhead lights (not siren) and the Defendant's vehicle pulled over to the side of the road. T.T. at 12. Officer Lucas stopped the Defendant's vehicle at 5:05 a.m. T.T. 17-18.

Upon approaching the Defendant's vehicle, Officer Lucas observed Defendant in the driver's seat, and "asked him what he was doing in that particular neighborhood at that time of night not being from the neighborhood." T.T. at 12-13. The Defendant responded with two answers: first, that he was "visiting a friend" and second, "he was trying to find their house for a date he had arranged with that person later on in the evening." T.T. at 13. The Defendant "was supposed to meet the guy at 5:00 at night, but he wanted to find his house at 5:00 in the morning." T.T. at 13.

While speaking with the Defendant, Officer Lucas detected the odor of marijuana emanating from the vehicle. Lucas Police Report 1/30/2017

7

Supplemental Narrative (hereinafter "LPR"), T.T. at 49. Officer Lucas observed in plain view sight a small, burnt marijuana blunt in the driver's door handle. LPR, T.T. at 49. Officers Shelehelfa and Hinsch arrived at the scene and Defendant was searched incident to arrest for the marijuana, revealing a small metal grinder containing loose marijuana along with fresh marijuana in Defendant's pant cargo pocket. LPR, T.T. at 49. Officers recovered a clear knotted plastic baggie with white powder residue, a multi-colored glass smoking pipe with burnt marijuana, and various bottles of liquors and beer. LPR, T.T. at 49.

Field sobriety tests were performed. LPR, T.T. at 49. While performing the tests, Officer Lucas detected a moderate odor of alcoholic beverage emanating from Defendant's breath and person along with the odor of marijuana. LPR, T.T. at 49. At 5:53 a.m., Defendant was subsequently transported to Sewickley Hospital for a blood draw which was positive for cannabis, cocaine, and alcohol. Allegheny County Office of Medical Examiner, Laboratory Toxicology Report at Lab Case No. 17LAB00906, T.T. at 49-50 (hereinafter "Lab Report"). Defendant's certified driving record was also submitted into evidence which indicated Defendant's driver license under suspension for DUI, and Defendant a habitual offender with five DUI arrests in ten years with two prior Driving Under Suspended License (75 P.S.

8

§1543(b)(1.1) convictions. Pennsylvania Department of Transportation, Bureau of

Driver Licensing, Certified Driver History, 1/27/2017; LPR, T.T. at 51-52.

At the conclusion of the Stipulated Non-Jury Trial on February 1, 2018, this

Court found the Defendant guilty of each of the Counts 1 through 8. T.T. at 53.

## ANALYSIS

The well-settled standard of review of a denial of a motion to suppress

evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to
> the denial of a suppression motion is limited to determining whether
> the suppression court's factual findings are supported by the record
> and whether the legal conclusions drawn from those facts are correct.
> Because the Commonwealth prevailed before the suppression court,
> we may consider only the evidence of the Commonwealth and so
> much of the evidence for the defense as remains uncontradicted when
> read in the context of the record as a whole. Where the suppression
> court's factual findings are supported by the record, [the appellate
> court is] bound by [those] findings and may reverse only if the court's
> legal conclusions are erroneous. Where ... the appeal of the
> determination of the suppression court turns on allegations of legal
> error, the suppression court's legal conclusions are not binding on an
> appellate court, whose duty it is to determine if the suppression court
> properly applied the law to the facts. Thus, the conclusions of law of
> the courts below are subject to plenary review.

*Commonwealth v. Jones,* 605 Pa. 188, 988 A.2d 649, 654 (2010) (internal citations
and quotation marks omitted).

Defendant asserts that Officer Lucas did not have reasonable suspicion to pull over his vehicle. *See* Defendant's Concise Statement of Errors Complained on Appeal, ¶8. To the contrary, this Court finds that Officer Lucas pointed to specific, articulable facts which based upon the surrounding totality of circumstances, supported an objective basis to establish reasonable suspicion to conduct an investigatory stop[1]. This Court incorporates herein by reference its Findings of Facts and Conclusions of Law made on the record dated February 1, 2018 (T.T. at 38-44), and reiterated at the July 12, 2018 Hearing of Defendant's Motion for Reconsideration (S.T. at 11-14).

As set forth in the Statement of Facts, on January 27, 2017, Officer Lucas had contact with the Defendant's vehicle on three occasions at or around 5:00 a.m. On the first two occasions, Officer Lucas personally observed the unusual driving conduct of the Defendant's vehicle and reasonably articulated the context of time, location, and suspicious behavior including, *inter alia*: mid-winter cold temperature; pre-dawn darkness; Defendant's idle motoring with no vehicle lights

---

[1] Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction. *Commonwealth v. Tam Thanh Nguyen*, 116 A.3d 657, 664 (Pa. Super. 2015). These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. See *Commonwealth v. Baldwin*, 147 A.3d 1200, 1202–1203 (Pa. Super. 2016) (citation omitted).

illuminated in a suburban residential no-parking zone subject to recent car break-ins; Defendant's departure from North Jamestown Street upon sight of the marked police car; Defendant's relocation to an unusual roadway position on the Westminster Road cul-de-sac with vehicle headlights illuminated; Defendant's second departure upon sight of the marked police car; Officer Lucas confirming Defendant's vehicle's out-of-county license plate registration; and subsequently, upon Officer Lucas' third contact when he questioned the Defendant about his reason for being in the neighborhood at that time of night.

Officer Lucas indicated that he had been an officer for 15 years, the last 9 years with the Moon Township Police Department including familiarity of the residential community.

As set forth herein, this Court finds based upon Officer Lucas' articulated contextual facts in light of his experience, that he made specific reasonable inferences to establish reasonable suspicion of criminal activity to question the Defendant:

> .... when you add all these facts up and when you add up when the officer finally finds the vehicle .... The officer has enough at that point of an articulable, reasonable suspicion to stop the vehicle at that point, to affirmatively stop the vehicle and then conduct further investigation.

S.T. at 14.

11

Officer Lucas articulated facts which in the totality of the circumstances was sufficient to establish reasonable suspicion.

As stated by the United States Supreme Court in reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and thus the Supreme Court cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000) (defendant's presence in high crime area combined with unprovoked flight justifies *Terry* stop). Thus, the determination of reasonable suspicion must be based on common-sense judgments and inferences about human behavior. *See United States v. Cortez*, 449 U.S. 411,418(1981). *Wardlow, Id.* The United States Supreme court has also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Wardlow, Id.*

The uncontradicted evidence of Officer Lucas when read in the context of the totality of circumstances supports his reasonable suspicions about the activity of the Defendant's vehicle.

As Officer Lucas first passed Defendant's vehicle, he noted that he thought it "odd" that the headlights were not on but the car was running, and he believed it

12

to be "odd" for a car idling in the roadway in this suburban area subdivision with the lights off at that time in the morning – 5:00 a.m.

As Officer Lucas sought to first contact Defendant's vehicle, the Defendant's vehicle promptly departed and the Officer did not see the direction in which the Defendant had departed. This pre-dawn activity first garnered the officer's attention[2].

Officer Lucas then proceeded throughout the subdivision to look for the car, and located the car in a cul-de-sac in the same neighborhood. Officer Lucas specifically testified that the location of the car in the cul-de-sac was in the middle of the cul-de-sac with the lights on, not parked, and not in a lane of travel. This irregular motoring behavior further raised Officer Lucas' reasonable suspicion.

As Officer Lucas sought to have a second contact, the Defendant's vehicle drove away. While following the vehicle, Officer Lucas attained additional information which, under the totality of the circumstances, supported his reasonable suspicions that criminal activity may be afoot -- he affirmed that ownership of the Defendant's vehicle came back to an individual registered in

---

[2] At this chronological juncture, the Officer had not engaged in an investigatory stop. The Court is mindful of the community caretaking doctrine applicable to police as adopted in *Commonwealth v. Livingstone*, 174 A.3d 609 (Pa. 2017). *Livingstone* is factually distinct. In the case *sub judice*, Officer Lucas had not concluded that the sole male occupant driver was in apparent peril, distress, or need of assistance. To the contrary, the Defendant continued to exercise freedom of movement in his vehicle, albeit raising additional continuing suspicion from his irregular activity which subsequently led to the third encounter.

13

Canonsburg, Washington County and not Moon Township, Allegheny County. The abnormal driving pre-dawn motorist's vehicle was not registered to a neighborhood location.

As a result of the Officer's articulated facts of the irregular activity of the Defendant's vehicle at 5:00 a.m. in a suburban residential area after two abnormal roadway contacts in two different locations; the recent history of vehicle break-ins; and in conjunction with vehicle out-of-county registration information -- Officer Lucas activated the Police vehicle's overhead lights.[3]

The Court finds that Officer Lucas had articulated an objective basis to support his reasonable suspicion to encounter the Defendant and this encounter was either a mere encounter or, at best, an investigative detention[4]. T.T. at 41.

---

[3] The record is devoid of any reasonable activity that would have removed suspicion of Defendant's irregular pre-dawn roadway conduct, e.g., newspaper delivery, attendant travel from the residential area to a work location, or even casual joyriding while mindful of the rules of the road. Officer Lucas articulated facts related to the Defendant vehicle's abnormal driving activity, including idling in a residential no-parking zone and improper lane travel in a residential cul-de-sac. Moreover, *Terry* does not require police to observe unquestionably criminal behavior before they may perform an investigative detention. *Commonwealth v. Davis,* 102 A .3d 996, 1000 (Pa.Super.2014) (quoting *Commonwealth v. Rogers,* 849 A.2d 1185, 1190 (Pa.2004)). Potential innocent explanations for Defendant's behavior do not negate reasonable suspicion. *Id.*

[4] As previously stated in footnote 1, there are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.
*In re J.G.,* 145 A.3d 1179, 1185 (Pa. Super. 2016).

14

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio*, 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968). In the case of **Commonwealth v. Barnett,** 484 Pa. 211, 215, 398 A.2d 1019, 1021 (1979), citing **Commonwealth v. Berrios**, 437 Pa. 338, 340, 263 A.2d 342-343 (1970), our Supreme Court reaffirmed the well-settled *Terry* standard that:

> A policeman may legally stop a person and question him. But he may not without a warrant restrain that person from walking away . . ., unless he has 'probable cause' to arrest that person or he observes such unusual and suspicious conduct on the part of the person who is stopped . . . that the policeman may reasonably conclude that criminal activity may be afoot . . . ." (Footnote omitted)

The line of distinction between merely "approaching a person and addressing questions to him" or "legally stopping" him, and restraining him or making a "forcible stop," *Terry*, 392 U.S. at 32, is not subject to precise definition because of "the myriad daily situations in which policemen and citizens confront each other on the street." *Terry*, 392 U.S. at 12. Each factual situation must be examined to determine if force was used to restrain the citizen in some way. Such force may include "physical force or (a) show of authority." *Terry*, 392, n. 16.

This Court finds that Officer Lucas' third contact with the Defendant's vehicle initiated as a mere encounter simply because, as the Court noted in the closings of

15

the parties, a policeman may legally stop a person and question him[5]. *Terry*, *supra*.

Officer Lucas had contact with Defendant's vehicle on two previous occasions: 1) his initial observation of the Defendant's vehicle with headlights off and the engine running in a non-parking zone on North Jamestown Road and, 2) on the second contact when Defendant's vehicle was improperly positioned in the cul-de-sac on Westminster Road. The Court finds that the Officer activating his overhead lights after the first two contacts was to conduct an inquiry based upon the totality of circumstances and Officer Lucas' direct observations of the Defendant vehicle's irregular roadway activity at 5:00 a.m. in a residential area subject to a recent rash of vehicle criminal activity[6].

---

[5] Pennsylvania Courts and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. See *Commonwealth v. Singleton*, 169 A.3d 79, 82–83 (Pa. Super. 2017) citing to *Hiibel v. Sixth Judicial District of Nevada*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (*quoting INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (officer free to ask for identification without implicating Fourth Amendment, and requests for identification do not, by themselves, constitute seizures); *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citation omitted) (even when officers lack suspicion, no Fourth Amendment violation where they merely approach individuals on street to question them or request identification); [*Commonwealth v.*] *Au*, [615 Pa. 330, 42 A.2d 1002,] 1007–09 [ (2012) ] (citations omitted) (same); *Commonwealth v. Ickes*, 582 Pa. 561, 873 A.2d 698, 701–02 (2005) (citation omitted) (same). Officers may request identification or question an individual "so long as the officers do not convey a message that compliance with their requests is required." *Bostick*, at 437, 111 S.Ct. 2383. Although police may request a person's identification, such individual still maintains " 'the right to ignore the police and go about his business.' " *See In re D.M.*, 556 Pa. 445, 781 A.2d 1161, 1164–65 (2001) (citations omitted) (*quoting Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ).

[6] At trial, Defendant relied on *Commonwealth v. Morrison*, 2017 Pa.Super. 194, 166 A.3d 357 (2017) (suppression granted under the totality of circumstances, as the quality and quantity of information provided by an unknown source was insufficiently reliable to establish reasonable suspicion). *Morrison* is distinguishable. In the instant matter, Officer Lucas had personal knowledge of the recent vehicle break-ins; and relied upon his own observations, training, and experience as a police officer to identify the sole male occupant of the vehicle, its irregular roadway activity, the pre-dawn time of day and darkness, its stop in a no-parking zone, the nature of the residential neighborhood, absence of any reasonable explanation for the unusual activity, and confirmation of out-of-county license plate registration.

As a practical matter, Officer Lucas' two previous contacts in his marked police vehicle with the Defendant's vehicle did not alleviate his concerns about the Defendant's "odd" conduct but, to the contrary, provided further information and additional personal observations to heighten his suspicions. As Officer Lucas testified about his report, "Based upon the above-stated [police report] details and now that the plate was not local to the area, I felt I had reasonable suspicion to initiate a traffic stop." LPR, T.T. at 19.

Moreover, the Court is mindful of the common sense practicalities involved in the contacts between Officer Lucas and the Defendant. In the late January pre-dawn darkness and cold temperature both Officer Lucas and the Defendant were in their respective vehicles. Factually distinguishable from a mere encounter with a pedestrian to briefly question, the Defendant was in a vehicle that on two occasions drove away from the marked police vehicle after it had engaged in "odd" and unusual motoring. At the suppression hearing *sub judice*, this Honorable Court noted the following:

> The actions of the Defendant, or drawing the proper inference of seeing the police vehicle and leaving, puts the officer in a position where, obviously, he can't have a mere encounter because the

17

vehicle leaves and is moving …. So obviously the officer can't have a mere encounter[7]. He has to stop the vehicle first.

S.T. at 17.

"In striking the balance between the public interest and the individual's right to personal security free from arbitrary interference of law enforcement officials, the initial inquiry must focus upon the propriety of the initial restraint of appellant's freedom of movement." *Commonwealth v Robinson*, 410 Pa.Super. 614, 600 A.2d 957, 960 (1991) citing *Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298, 1300–1301 (1978).

Applying the totality of factual circumstances test, after having contact with the Defendant's vehicle on two previous occasions, Officer Lucas engaged the minimal exercise of authority to question the Defendant about his pre-dawn out-of-county irregular residential neighborhood activities. In the pre-dawn darkness, Officer Lucas activated his police vehicle's overhead lights but not his siren. Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other

---

[7] A mere encounter constitutes a request for information, but carries no official compulsion to stop and respond. See *Commonwealth v. Baldwin*, 147A.3d 1200, 1202-03 (Pa. Super. 2016).

18

public places and putting questions to them if they are willing to listen. **United States v. Drayton**, 536 U.S. 194, 200 (2002).

Common sense dictates that for the safety of both the officer and the motorist -- under the pre-dawn winter circumstances -- the activation of overhead lights was the most minimally restrictive exercise of authority to permit Officer Lucas to safely approach the Defendant's vehicle and ask questions. In addition, at the point Officer Lucas activates the overhead lights, he had reasonable, articulable suspicion that criminal activity was afoot to make the investigative detention. S.T. at 18.

As set forth in **Commonwealth v. Carter**, 105 A.3d 765, 768–69 (Pa. Super 2014) (*en banc*) *appeal denied* 632 Pa. 667, 117 A.3d 295 (2015):

> [t]he Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. It is axiomatic that to establish reasonable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.... [A]s the Supreme Court has long recognized, **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is an exception to the textual standard of probable cause. A suppression court is required to take into account the totality of the circumstances—the whole picture. When conducting a **Terry** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present.

19

This Court finds that that Officer Lucas had an articulable reasonable suspicion that criminal activity was afoot. In light of the totality of the circumstances, considering all of the facts that the officer testified to, the Court concludes that the officer possessed a reasonable suspicion that criminal activity was afoot and/or that was that the Defendant may well be a possible suspect involved in car break-ins as has been reported in the area in the preceding week.

This Court finds that the officer's actions were appropriate and reasonable both under the confines of the Fourth Amendment of the United States Constitution and the search and seizure provisions of the Commonwealth of Pennsylvania's Constitution, and accordingly, the Court reaffirms denial of the Defendant's Motion to Suppress and Verdict.

## CONCLUSION

In conclusion, this Court submits that the verdict and sentence of Defendant Anthony M. Miranda be **AFFIRMED.**

**BY THE COURT:**

DATE: 2/27/2018

_____ J.,

**Philip A. Ignelzi**

20